Our first case for argument this morning is the United States v. Orrantia, and Counsel, we're ready for you when you're ready to present. May I approach the lectern, Your Honor? Yes, please. Thank you. May it please the Court. My name is Brock Benjamin, and I am here to represent Oscar Orrantia. Before I begin, I have two preliminary matters, one of which is I re-urge my hope that I have every time I'm here to reserve some time for rebuttal, and I will do my best to do that. But the second, Your Honor, is I have advised the United States. My reply brief, Your Honor, I think was a little ambitious, and the first issue in my reply brief I think violates the cardinal rule of not raising an issue in a reply brief. And so I've notified the United States, Your Honor. Having said that, I'm going to begin with issue three, which is the deprivation of the video. Before you start, I don't know which issue you're abandoning. Is it the argument that section 1519 is unconstitutional as applied? No, Your Honor. That is the count two had insufficient evidence, and the non-unanimity instruction is structural error in the reply brief, Your Honor. Thank you. Director Hall annihilated Oscar Arantia, and this was mainly because my, I would like to say my close friend, Marissa Ong, is a very advocate, strong advocate, and she used, and she, the government, used him as a sword and a shield. Director Hall's testimony and participation falls into three of the issues that Oscar Arantia is appealing. I had filed a motion for remand, first time I've done that, and I had attached an Exhibit A that discusses the June 4th, 2020, incident with a witness to Rabat-Ong. And Hall and the video, I think, and can argue, are exculpatory. And I had asked for a remand. That didn't happen, Your Honor. We're here. The United States has responded, and I'm wondering if I proceed on that, Your Honor, or if the court has any guidance for that. No guidance. Just please proceed. Thank you, Your Honor. And, Your Honor, at this point in time, I think, in having briefly discussed this with the United States, I think that's almost fully briefed. Court Director Hall stated that he, in that letter, states that he reviewed the video of the incident and was unable to hear the comments described by Mrs. Barong. He stated that he observed the use of force as applied by Officer Arantia, and Arantia was not disciplined about that. Additionally, he says that when he talks about the badging incident, as the United States mentioned it, he says that Arantia was noncompliant. This is, I think, central to the idea that the United States uses Hall and argues at a different issue that there was a specific contradiction. However, this testimony shouldn't have come in without the video that was destroyed. And if we look at the timeline... Did the defendant open the door by testimony and direct out? Your Honor, I don't think so. And Joe Shaddock, the defense counsel, specifically said Oscar Arantia and the letter that Exhibit A says that he was noncompliant. There's nothing about dishonesty or that he was disciplined for that. And so opening the door is always a careful line that counsel walks, but... Are we talking about Director Hall? Correct, Your Honor. Director Tony Hall. And so, Your Honor, I would suggest that no, because I think it was those issues and those impeachment issues, and I've referred to them as the 404B issues. The court goes back and forth, and I think the government clearly intended to argue them as 404B from its briefing and its argument during trial. But the government used the Barone and Tony Hall incident as a sword and a shield where it chose, and the government had stated that we did not charge this incident. And frankly, the reason we didn't charge it, because we didn't have a video like we do for the incident with John Doe. And if the court will recall, that incident with John Doe was a year prior to the incident that they don't have the video with. But so they're able to argue... But there haven't been proceedings, criminal proceedings against your client yet, right? Correct, Your Honor. There had been no... And so they take over every 90 days, correct? That was the testimony, Your Honor. The issue here is that they produced some videos and not the video with Barone, and so the United States came in and said that we don't have that video, but yet we're going to say that this incident happened and leave an impression that, quite frankly, Mr. Arantia was probably charged in a separate incident or something out of that, when there was no discipline that was imposed by that. What is the answer to Judge McHugh's question as far as 90 days? You said there's testimony. We take that as so, don't we? Your Honor, that comes from Director Hall, but I think that that testimony and the writing over of the video, Your Honor, I think is something that goes into the good faith, bad faith, trombetta argument as to whether or not they should be able to use that incident with the video. If they taped over it, the CBP is still the government. Well, if it's a 90-day policy and there's only so many tapes or whatever else, how is that bad faith? Because we still have the video from the initial incident, and we have the, Your Honor, and that video, we only have that because of civil litigation. And so if we're preserving some videos for civil litigation, but yet we're going to pick and choose the videos, I think that that is, I think that, Your Honor, that's something that bothers, I think as a defense attorney, that's something that bothers us because it does, I think, go into that. Doesn't that really support the government's position, though, that they were preserving it because of litigation and routinely destroying things they didn't need for litigation purposes? Yes, Your Honor, but then the argument is that they don't get to use the other incident, imply that he was disciplined, and not have the video that they had reviewed and decided not to discipline Oscar Arantillon. Just so I can clarify, he was not disciplined for any of the prior incidents, right? Your Honor, I have to split that.  Because of the, he was not disciplined for the two use of force incidents that were brought in by 404, and the Bidone incident is the one that is a year later that he was not disciplined for, yes, Your Honor. And I couldn't find any evidence in the record where that was elicited, the fact that he was not disciplined. Your Honor, it's my understanding that they were essentially told that all they were going to be able to bring in was the 404B issue and not go into, for lack of a better term, administrative matters. But the issue is that leaves the hanging fruit out there that it's an implication a jury is going to draw, I believe. Let me stop you there. You argued Trombetta. For that to even apply, we have to know that the video would have been exculpatory. And we don't know that. So it seems to me that you're under, if anything, you would be under young blood, which would require a showing of bad faith. And I just don't think you have that here. Your Honor, respectfully, I would suggest that we're under Trombetta because the issue here was the government argued that they couldn't hear things on this video. Director Hall couldn't hear things on the video of Bidone. And so that would direct, that would be exculpatory because it would directly contradict and lead to a, the Brady language is what comes to mind, it would lead to a suggestion that there was less culpability than what was suggested by the government. Well, he said he couldn't hear it. He didn't say it wasn't said. I mean, we watch a lot of videos and, you know, there's lots of things that you can't hear. And the government in the false, in count two, Your Honor, argued that Mr. Orlante or Officer Orlante was making false representations because they couldn't hear things. It's the same exact couldn't hear statement that, or couldn't hear type of testimony that was being alleged. The issue one, Your Honor, sufficiency on knowingly making a false statement. Jackson versus Virginia says that reversal is needed where no rational jury could find beyond a reasonable. Let me stop you there. I think you've got a preservation issue with this particular claim. In the district court, you didn't argue about whether he knowingly made the statements. In the district court, you argued that there were no false statements made at all. It seems to me that's a different argument on appeal. Why should we consider it? Your Honor, in direct response to the fact that knowingly was not raised as part of the Rule 29 argument, I would point the court to page of the record, Volume 4, 686, where Mr. Shattuck says, I would submit to the court those issues are not falsifications but omissions, and the government then specifically in the conversation moves to whether there was knowingly falsified or made a false entry in a record or document. I think that was the heart of Mr. Shattuck's argument. And so that goes back to the – That's what the government said. What did you argue? The district court didn't rule on that. Your Honor, I think the district court ruled with the government and suggested that they, because they'd argued it, they supported the knowingly. That was Mr. Shattuck's, the heart of his argument. He didn't use the word knowingly. And respectfully, I don't know, to argue the mens rea, one has to use the term knowingly. But Ms. Ong jumped on that because that's what she understood Mr. Shattuck was raising, is the contention. And Mr. – in the falsification – or the falsification there, I cut and pasted many of the statements from Mr. Granillo, pulled his shoulders back and struck out his chest towards me, which is the statement in the report. The government argued that Director Harvey testified. You can't see that in the video. This was because the examples that I placed at page 29 in the brief are that the United States offered as examples of falsifications. However, they show that they're not by definition false, but they're either omissions or misleading. And Agent Ramos, even for the government, even testified about perceptions and the dark video. Further, Director Carman discussed the report with his supervisors, recommended discipline and was told not to impose it. And so these are all, I think, facts that go directly to the idea that these were just blatant misrepresentations by Agent Orantia as opposed to these were things that were, I think, very effectively argued by the United States. But I don't think that that gets us past the idea that what you can convince a jury of legally binds this court or the district court or this court to find that those were sufficient or that they were proper and that she didn't go out or the government didn't go outside of where they were at with regard to the mens rea. And Issue 2, Your Honors, I would suggest is also preserved because that's the same exact quotation from Mr. Shattuck, Volume 4, 685 to 687, where he states, I would submit to the court that those issues are not falsifications but omissions. And then the response from the government is that those are knowingly made and not omissions or anything else. Counsel, I will alert you. You're at the point where you said you wanted to reserve for rebuttal. It's your choice. You can continue to go on. I'm just providing you that as a courtesy. Thank you, Your Honor. I appreciate that. Does the panel have any questions based on where I'm at at this point? Thank you, Your Honor. May I reserve the remaining time? Yes. Thank you. Counsel, I'm James Braun on behalf of the United States. The defendant raises, by my count, seven issues, five in his opening brief and two more for the first time in his reply brief. He's withdrawn one of those, but we would argue that all but one of the arguments he raises should be considered waived. The first two issues, sufficiency of the evidence on count two, and the as-applied constitutional challenge to Section 1519, are waived because they were not raised below, and the defendant fails to argue plain error on appeal. Now, to follow up on Judge McHugh's question about whether this was preserved, the knowingly sufficiency argument, that simply was not the defendant's argument below. What he argued is that the evidence proved only that Arantia had omitted information from his report and that those issues were not falsifications. That's Appendix 4, page 686. That has nothing to do with knowingly. He didn't use the word knowingly. That was not the issue. And even if it was preserved, this Court can easily conclude that the evidence was sufficient on the knowingly element. This isn't a case where information was relayed to the defendant and then he wrote it into a report so he could argue, well, I didn't know it was false. I didn't even see it. These were actions that he committed himself, things that he observed himself, and the government established that he had a motive to falsify the report, to cover up for his unreasonable use of force. And so that simply wasn't even an issue at trial, and this Court can easily dispose of that issue. Now, in his reply brief, the defendant seems to expand on his sufficiency argument by raising, again, for the first time, a challenge to the deliberate ignorance portion of the jury instruction defining the word knowingly, and that's Instruction 24. He has not withdrawn that argument, and it didn't come up during his opening argument this morning, but it's important to point out that, you know, under Lafler, this Court generally doesn't consider issues raised for the first time in a reply brief, and it would be especially inappropriate here because, aside from being improperly raised for the first time, any possible error in this instruction was invited. This exact instruction was contained in the party's joint proposed instructions, the defendant didn't include that in his appendix, but that's Document 97, Instruction 8. And during the instructions conference at trial, after going through objections to other instructions, the Court asked if there was anything else on the proposed instructions from the defense, and defense counsel responded no, and he acknowledged that they had agreed to these instructions, which would include the instruction that had that deliberate ignorance portion of the knowingly instruction. And so we would argue it's invited error, if anything, this Court shouldn't even consider it under Lafler. And then finally, it's just perfunctorily briefed, and it's another reason not to consider it for the first time in a reply brief. Now, moving to the next issue, the defendant argues that the cumulative effect for Rule 404B incidents was unduly prejudicial. This issue is waived because it's the defendant's burden to point to where in the record he made a cumulative 403 objection. He hasn't done that, and he doesn't argue plain error. But it's also without merit, because only two of these incidents were actually introduced under Rule 404B, and the Court did do a proper Rule 403 analysis as to those incidents. The other two incidents were introduced to impeach the defendant after the defendant testified. Can I stop you there? Yes. You just touched the issue which is of most concern to me. It's not two questions. One is, how did Director Hall's testimony actually impeach what defendant testified to? And when he offered the opinion, basically, that defendant is a liar, how is that harmless error, especially on count two where the issue is about his intent and knowing falsification? Well, Judge Rattle, if you look at the defendant's testimony towards the end, the defendant is affirmatively asked about this girlfriend incident, as we've called it in the briefing. And he affirmatively testified that he had permission on a prior occasion to have his girlfriend visit, and that he assumed he had permission on this occasion. That's at page 898 of the appendix. So that's something that's brought up by the defendant on his own. Now, at that point, as Judge Phillips noted, that's opening the door to questions about that incident. It's opening the door to affirmative evidence about that incident. Totally aside from impeaching him with, you know, that he's lying about that during his testimony. So this evidence does both. It affirmatively responds to something that he opened the door to, and it impeaches him because what Director Hall testifies to is that, no, his investigation revealed that the defendant had not had permission on a prior occasion, and so, therefore, that's being untruthful. And that was proper impeachment of the defendant's testimony that he did have permission on a prior occasion. So for both of those reasons, this was proper. The defendant opened the door to it by testifying to it on direct, that exact incident, that exact issue relating to that incident, and it impeached him. And that's really all Director Hall testified to. He didn't testify to anything about the charged incident. And so to the extent that... Well, let me... The court let that incident in under 608, right? The court said it introduced that evidence for two reasons. One was 608, and one was impeachment, which we're arguing is proper as under the doctrine of specific contradiction, contradicting what the defendant testified to. Okay. So you concede that it would... That you can't use specific incidents of extrinsic evidence on 608. Right. That is true. But there's the independently sufficient reason that the court also cited, which was impeachment, which would be this court's doctrine of specific contradiction. The defendant hasn't even... Hasn't addressed that at all. And so under this court's case law, by not addressing an independent sufficiently sufficient reason, it's either waived or, you know, the defendant just has not addressed it. Now... Well, that, yes, that's under... When he's arguing... Right. When he's arguing the cumulative 403, cumulative prejudice. But he does raise 608 in a similar context as his final issue with regard to the Exhibit 31. And, but again, that's... Exhibit 31 wasn't introduced. And even in his reply, the defendant still intimates or even explicitly says that it was introduced. It simply was not. The district court said, this isn't coming in. And it didn't come in. What came in was Director Hall's affirmative testimony about that incident and the discipline related to that incident. And so to the extent the defense is arguing that that exhibit was improperly introduced as extrinsic evidence under 608B, that's not accurate. It didn't come in for that reason. And now when Director Hall's information originally came up, it was when the defendant was still on the stand. And so the idea of 608B was still a live issue, whether Orantia could be cross-examined with that information. And that would have been proper. That would not have been extrinsic evidence. Instead, the government didn't ask him about it on cross, asked about the badging incident that he had also raised, and then brought in Director Hall's testimony affirmatively. And at that point, the defendant didn't object on 608 grounds, didn't object in that regard. And so it's waived, but we also just don't even need to go there because of the independent reason being the specific contradiction. And it did specifically contradict something that the defendant himself testified to. If I could just have a moment. I had to cross out some stuff when I found out the defense was withdrawing the unanimity instruction argument. Would you talk about the harmless error part? I'm sorry? Would you address the harmless error if Director Hall's testimony came in improperly? Yes. It would definitely be harmless because he didn't testify again about the charged incident. And the jury heard a lot of evidence, saw the video of the charged incident, heard from Mr. Granillo and Mr. Granillo's, I think it was his wife's cousin. There was substantial evidence that the jury could base the verdict on for counts one and two. Really, all Hall's testimony did was relate to this uncharged incident that the defendant himself had testified to. And it was certainly harmless in that regard. Was Mr. Hall listed as a witness to testify to that before the defendant testified on direct? I don't know off the top of my head if he was listed on the witness list. Does it matter? It shouldn't matter, no. I mean, because he ended up just testifying in rebuttal and he rebutted that testimony that the defendant himself had put on. And so, if anything, that just makes it more harmless, the fact that he was rebutting something the defendant opened the door to. In rebuttal, meaning during the government's case or during rebuttal? During the government's rebuttal. So the government had put on its case, rested, the defendant testified, and then the government called Director Hall in rebuttal after the defendant rested.  Okay. Now, as far as the Trumbetta Youngblood violation, as Judge McHugh noted, this is not Trumbetta. The defendant, the best he can do is speculate as to what these videos would have shown. And so this is classic Youngblood where the defendant has the burden to show bad faith. He has not shown that the district court clearly erred in finding no bad faith. And, in fact, under this Court's Smith case, destroying evidence pursuant to standard policy generally precludes a finding of bad faith in the absence of compelling evidence to the contrary. And the defendant points to no compelling evidence whatsoever. These videos were written over long before a criminal investigation of the defendant ever began. And, as a practical matter, what we know is that Director Hall said that he saw the video, he saw the use of force, but he couldn't hear what was said. And we don't know why he couldn't hear. Was it because it was just fuzzy? I mean, there's, as Judge McHugh noted, lots of videos where you just can't hear what's going on. I believe the defendant himself testified to videos of other incidents where you couldn't hear very well. So that's not exculpatory in and of itself. He doesn't say why they couldn't hear, but he says he did see the use of force. But the defendant could have asked Director Hall about that when Director Hall testified. He made no effort to do that. He could have asked Director Hall, what did you see? What did you hear? He made no effort to do that. And so that undercuts any due process claim that the defendant makes on appeal. Unless the court has any additional questions, we would ask the court to affirm. In this sort of circumstance where there's been an allegation, can the accused obtain a copy of the video for his or her own purposes? In other words, anticipating this might be a problem, I want a copy of that video. I would imagine that a subject could request a copy of the video, but I don't know for sure. I don't know how it came up in this case where the video of the charged incident was preserved. You know, we know that Mr. Granillo went to the Sheriff's Department, made a complaint. He went to the hospital. The ACLU actually filed something, and I would imagine that's part of what caused this to be preserved. But it's not in the record how that played out or what the process would be. Any further questions? Counsel, thank you. Thank you. Mr. Benjamin, you have some rebuttal time. Your Honor, let me address the court's last question. I don't know if it was asking if Mr. Granillo or if Mr. Arantia could obtain a copy of the video. The way that I understood the court's question is that the best that Mr. Arantia, I think, could do in my experience is he could ask for something to be preserved. But I would suggest that based upon what had happened and what had been recorded in Exhibit A to my motion for remand, that he wouldn't have any reason to suspect that because he was not disciplined because they talked about him having a use force and that having been observed. Specifically with issues regarding with Count 2 and whether those were preserved or raised, Your Honor, I would suggest that that was raised in a motion to abate because Thompson comes up with that. I would point the court to United States v. Burke, 633 F3rd 984, Tenth Circuit, 2011, and United States v. Hamilton, 587 F3rd 1199, 2009, that talk about the court can review those. And that wasn't something that was a change in the law that couldn't have been anticipated based upon where I was at. Judge Rattle had asked me and the United States about the defense affirmatively opening the door to the testimony. And I think the issue here in the government has given me something for future trials with this specific contradiction idea. But the problem and I think the issue that Judge Rattle has hit on the head is Exhibit 31 doesn't say anything about dishonesty or anything else. And there's an exchange at Volume 5, 895, and I lost that note, but I believe that's the correct page number, that where they go out and there's a discussion in the hallway between Ms. Ong after she says, what will Mr. Hall testify to? They go out. She comes back in. She represents to the court. It's not in the letter, but Mr. Hall is going to testify that he was dishonest. And then the court asks Mr. Shattuck, do you have any questions for that? And Mr. Shattuck says no. Ms. Ong is an officer of the court, has just represented the court, which she thinks Mr. Hall is going to testify to. But that's a shifting target where he can just come in and say he's dishonest. That's not what was in the report. That's not what was represented or anything else. And as I suggested – But Judge Cross examined him on that, couldn't he? Your Honor, respectively, the idea that I would just bring up and enter into more mudslinging with an individual who has just called my client an unsubstantiated liar I think is something that, as a trial attorney, I would not do because I've raised it with the court, I've lost it with the court, and now I'm going to poison the jury with the idea and allow Director Hall to improve. And, Your Honor, this is my position and I think I'm out of time, Your Honor. All right. Any further questions? All right. Thank you for your arguments, counsel. The case is submitted. Counsel are excused. Thank you, Your Honor.